THE HONORABLE BARBARA J. ROTHSTEIN

FILED —— ENTERED
—— LODGED —— RECEIVED

FEB 2 1 2003

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                          DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| RAYMOND LEICH, a resident of Florida, derivatively on behalf of EVERGREEN STATE RESTAURANT CORP., | NO. C 03-0108 BJR |
| Plaintiff, | MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE |
| v. | |
| CRAIG and JANE DOE EDWARDS, Washington residents, and their marital community, | |
| Defendants, | Note on Motion Calendar: Emergency Hearing 2/21/03 |
| and | |
| EVERGREEN STATE RESTAURANT CORP., a Washington corporation, | |
| Nominal Defendant. | |
| CRAIG R. EDWARDS, on his own behalf and on behalf of EVERGREEN STATE RESTAURANT CORP., | |
| Counterclaimant and Third-Party Plaintiff, | |
| v. | |
| RAYMOND M. LEICH, an individual; CLIFFORD L. JONES and LINDA JONES, and their marital community; and EVERGREEN RESTAURANT VENTURES, INC., a Washington corporation, | |
| Counterclaim Defendants and Third-Party Defendants. | |

CV 03-00108 #00000010

MOTION FOR TEMPORARY
RESTRAINING ORDER (NO. C 03-0108 BJR) - 1
3962\001\149394.01

ORIGINAL

TOUSLEY BRAIN STEPHENS PLLC
700 Fifth Avenue, Suite 5600
Seattle, Washington 98104-5056
TEL 206.682.5600 • FAX 206.682.2992

1   Derivative Plaintiff Raymond Leich ("Leich"), by and through his undersigned

2   attorneys of record, respectfully moves as follows:

3

4                    I. INTRODUCTION AND RELIEF REQUESTED

5       This is a shareholder's derivative action alleging breach of fiduciary duty, conversion,

6   minority shareholder oppression, and other causes of action stemming from the conduct of the

7   two-thirds majority shareholder, Defendant Craig Edwards ("Edwards") in nominal Defendant

8
    Evergreen State Restaurant Corporation ("Evergreen"), a closely held Washington corporation.
9
        Even now, while this lawsuit is pending, Edwards proposes to amend the Evergreen's
10
11  bylaws in an effort to force the corporation to divert critical management fees to pay for

12  corporate and personal expenses unrelated to the purposes for which the management fees are

13  intended.  Edwards is also attempting to amend the bylaws to prohibit a necessary financing

14  arrangement, to which Edwards specifically agreed, that has maintained the viability of

15  Evergreen for more than two years.  If Edwards is permitted to take these steps, the corporation
16
    and its shareholders will suffer irreparable and wrongful harm.
17
        Edwards has scheduled a special shareholders meeting for Monday, February 24, 2003,
18
19  with the minimum of notice.  Leich therefore respectfully moves on an emergency basis for a

20  Temporary Restraining Order enjoining Edwards from voting in favor of amending

21  Evergreen's bylaws and for other relief as set forth in the accompanying proposed Order.[1]

22

23

24   _____

25   [1] Due to the limited time available to Leich to bring this motion, opposing counsel was provided notice of the
    emergency hearing following the breakdown of negotiations on the afternoon of Wednesday, February 19, 2003,
    but was not provided copies of these pleadings until the evening of February 20, 2003.  Plaintiff has offered to
26   postpone this hearing if Defendant would agree to similarly postpone the scheduled shareholders' meeting until
    after the emergency hearing occurs.  Declaration of David Hoff, at ¶4.

MOTION FOR TEMPORARY
RESTRAINING ORDER (NO. C 03-0108 BJR) - 2
3962\001\149394.01

TOUSLEY BRAIN STEPHENS PLLC
700 Fifth Avenue, Suite 5600
Seattle, Washington  98104-5056
TEL 206.682.5600 • FAX 206.682.2992

1  Leich also moves the Court for an Order directing the Clerk to accept certain financial

2  records and a report of forensic accountants under seal, as set forth on the accompanying

3  proposed Order Granting Motion to Seal.

4  ## II. FACTUAL BACKGROUND

5  The following is a summary of facts relevant to this motion.  This summary is supported

6  by the Declarations of Ray Leich ("Leich Decl."), Clifford Jones ("Jones Decl."), and David

7
8  Hoff ("Hoff Decl."), and their respective attached exhibits.  The declarations and exhibits

9  provide additional detail that may be helpful to the Court, and are incorporated into this motion

10  by this reference.

11  Leich, Edwards, and Third Party Defendant Clifford Jones ("Jones") are the sole

12  shareholders and directors of Evergreen.  101 shares of Evergreen stock are issued and

13  outstanding: Edwards holds 70 shares; Jones holds 30 shares, and Leich holds a single share.

14
15  Leich Decl., at ¶¶2-3; Jones Decl., at ¶¶2-3.

16  Through a network of joint ventures and limited partnerships, Evergreen owns an

17  interest in and formerly had management responsibilities for each of 27 Outback Steakhouse

18  restaurants located throughout the Pacific Northwest.  Distributions to Evergreen from this

19  operation have historically totaled more than one million dollars annually.  Importantly,

20  Evergreen has no other assets or sources of income.  Evergreen's participation in the restaurant

21  ventures is subject to franchise agreements with Outback Steakhouse of Florida, Inc. ("OSF").

22
23  These franchise agreements give OSF broad latitude in approval and termination of franchisees.

24  Leich Decl., at ¶7; Jones Decl., at ¶7; *See also e.g.*, Ex. B to Leich Decl. at §5.3 (sample

25  franchise agreement).

26

MOTION FOR TEMPORARY
RESTRAINING ORDER (NO. C 03-0108 BJR) - 3
3962\001\149394.01

TOUSLEY BRAIN STEPHENS PLLC
700 Fifth Avenue, Suite 5600
Seattle, Washington  98104-5056
TEL 206.682.5600 • FAX 206.682.2992

1    For most of the period 1995-2001, Edwards was President of Evergreen and responsible

2  for managing its obligations with respect to the restaurants, OSF, and the various limited

3  partnerships. His wrongful conduct during his tenure forms the basis of this lawsuit. Edwards'

4  conduct during this period also jeopardized Evergreen's relationship with OSF and Evergreen's

5  limited partners. In January 2001, OSF threatened to terminate Evergreen's franchise

6  agreements unless Edwards was removed from active control and replaced by Jones. Leich

7
8  Decl., at ¶8; Jones Decl., at ¶8; *See also*, Ex. F and G to Leich Decl. (Additional letters from

9  OSF on this issue).

10    In response to OSF's threats to terminate Evergreen's franchise agreements, Leich,

11  Edwards and Jones unanimously agreed that Third Party Defendant Evergreen Restaurant

12  Ventures Incorporated ("ERVI"), owned and operated by Jones (simultaneously unanimously

13  elected president and CEO of Evergreen), would take over Evergreen's partnership/restaurant

14
15  management responsibilities. In consideration, Leich, Edwards and Jones also agreed that

16  ERVI would receive any management fees permitted under the various franchise and limited

17  partnership agreements. At OSF's insistence, Evergreen would continue to hold its ownership

18  interests but would essentially be a "silent" investor. Evergreen's assets, again with the consent

19  of Edwards, Jones, and Leich, were cross collateralized with ERVI to obtain necessary

20  financing. The alternative to this strategy was to face termination by OSF and the destruction

21  of Evergreen's asset value. Leich Decl., at ¶10; Jones Decl., at ¶10.

22
23    With the consent of all Evergreen shareholders, the ERVI/Evergreen arrangement has

24  lasted for more than two years. It is directly responsible for the continued viability of

25  Evergreen and significant increases in shareholder value. All of the management fees ERVI

26  receives have been used to enhance the value of Evergreen's limited partnerships. This, in turn,

MOTION FOR TEMPORARY
RESTRAINING ORDER (NO. C 03-0108 BJR) - 4
3962\001\149394.01

**TOUSLEY BRAIN STEPHENS PLLC**
700 Fifth Avenue, Suite 5600
Seattle, Washington 98104-5056
TEL 206.682.5600 • FAX 206.682.2992

1   has enhanced the value of Evergreen itself.   ERVI's prudent use of management fees is also

2   directly responsible for the significant increase in distributions from the 27 limited partnerships

3   in which Evergreen has a direct or indirect ownership interest:  from approximately $3.8

4   million in 2001 to approximately $5.8 million in 2002.  In the meantime, although it continues

5   to take issue with Edwards' majority ownership of Evergreen (claimed by it to violate the

6   franchise agreements), OSF has granted extensions to Evergreen to resolve its internal issues.

7   These extensions and the friendly atmosphere between Evergreen and OSF would not exist but

8   for the efforts of Jones, Leich, and ERVI, and would certainly immediately cease to exist if

9   Edwards used his majority interest to re-seize operational control. Leich Decl., at ¶12; Jones

10  Decl., at ¶12.

11

12          This lawsuit was filed on January 21, 2003.  Edwards has scheduled a special

13  shareholders meeting for Monday, February 24, 2003.  At this meeting, Edwards proposes to

14  use his voting power as two-thirds shareholder to unilaterally amend Evergreen's bylaws.

15  Edward's proposed amendments would force Evergreen to break its longstanding agreement

16  with ERVI by paying Evergreen's expenses and overhead—all unrelated to management of the

17  limited partnerships, in which Evergreen no longer plays an active role—before remitting any

18  funds to ERVI to pay for management operational expenses. Leich Decl., at ¶13; Jones Decl.,

19  at ¶17; *See also*, Ex. D to Leich Decl. (proposed amended bylaws; compare to Ex. H to Jones

20  Decl. (existing Evergreen bylaws)).

21

22          All management fees are urgently required (and mandated by agreement) to be spent on

23  supporting the limited partnerships and none can be spared to pay for Evergreen "expenses"

24  necessarily unrelated, as Evergreen does not provide management support, to the purposes for

25  which the management fees are collected.  In addition, OSF has required as a condition of

26


continued franchise control that Edwards have no active role in management. Still further, the limited partnerships themselves expect and require that management fees collected pursuant to limited partnership agreements and franchise agreements be used solely for providing management services directly related to the operation of the limited partnerships. Leich Decl., at ¶14; Jones Decl., at ¶18; *See also*, Ex. B and E to Leich Decl. (sample franchise and limited partnership agreements).

A similar issue exists with respect to the identity of "expenses" Edwards might expect to be retained and paid out of management fees by Evergreen pursuant to the proposed amended bylaws. For years, Edwards used his position as President of Evergreen and controlling shareholder to treat Evergreen as his personal bank account. As detailed in the Complaint (Ex. A to Hoff Decl.) and other documents (e.g., Ex. A to Leich Decl.), an independent forensic accountant determined that Edwards paid for personal expenses out of corporate funds, and often reimbursed himself for duplicate expenses and expenses charged but not incurred. The magnitude of this improper conduct, which is mentioned only in passing here in the interests of brevity, cannot be overstated. Edwards also improperly held back a large percentage of the management fees—claimed by his attorney to exceed at one point $500,000 annually—to be applied to Evergreen as a profit rather than used to strengthen and support the limited partnerships from whom the fees were collected. Leich Decl., at ¶15; Jones Decl., at ¶19.

The proposed amendment to the bylaws would also prohibit cross-collateralization of loans absent the approval of Edwards. This is nothing short of an attempted end run around the parties' longstanding agreement that ERVI would be permitted to cross-collateralize necessary loans with Evergreen. Again, if this arrangement is halted, ERVI's ability to provide

TOUSLEY BRAIN STEPHENS PLLC
700 Fifth Avenue, Suite 5600
Seattle, Washington 98104-5056
TEL 206.682.5600 • FAX 206.682.2992

1   management service, and Evergreen's viability, will come to an end.  Leich Decl., at ¶16; Jones

2   Decl., at ¶20.

3         If Edwards is allowed to hold his special shareholders meeting, Edwards will return to

4   his old practices of waste, mismanagement and misappropriation.  A return to these practices

5   would irreparably harm Evergreen and its shareholders and threaten the very viability of the

6   corporation.  Leich Decl., at ¶17; Jones Decl., at ¶22.

7         Accordingly, Leich, fully supported by Jones, has brought this motion.

8
                                   **III. Argument**
9

10        A party seeking a TRO must satisfy the same test required for the issuance of a

11  preliminary injunction.  *See* Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832,

12  839 n.7 (9th Cir. 2001); Bronco Wine Co. v. United States Dep't of Treasury, 997 F. Supp.

13  1309, 1313 (E.D. Cal. 1996).

14        The standard for a preliminary injunction balances the plaintiff's likelihood of success
15
    against the relative hardship to the parties.  Sun Microsystems, Inc. v. Microsoft Corp., 188
16
    F.3d 1115 (9th Cir. 1999).  To obtain a preliminary injunction, a party need only demonstrate
17
18  either: (1) a likelihood of success on the merits and the possibility of irreparable injury; or (2)

19  that serious questions going to the merits were raised and the balance of hardships tips sharply

20  in its favor.  Walczak v. EPL Prolong, Inc., 198 F.3d 725, 731 (9th Cir. 1999)(internal citations

21  omitted).  These two alternatives represent "extremes of a single continuum," rather than two
22
    separate tests; thus, the greater the relative hardship, the less probability of success must be
23
24  shown.  Id.

25        In this case, because the evidence available satisfies the requirements of either extreme,

26  Leich is entitled to the injunctive relief he seeks.

**TOUSLEY BRAIN STEPHENS PLLC**
700 Fifth Avenue, Suite 5600
Seattle, Washington 98104-5056
TEL 206.682.5600 ◆ FAX 206.682.2992

**A. Leich Is Substantially Likely to Succeed on the Merits of His Claims Against Edwards.**

Corporate directors and officers in Washington must adhere to strict standards in the performance of their duties. Wash. Rev. Code § 23B.08.300, which governs the conduct of directors, provides:

> General standards for directors.
>
> (1) A director shall discharge the duties of a director, including duties as member of a committee:
>
> (a) In good faith;
> (b) With the care an ordinarily prudent person in a like position would exercise under similar circumstances; and
> (c) In a manner the director reasonably believes to be in the best interests of the corporation.

RCW § 23B.08.030 (extended to the conduct of corporate officers by § 23B.08.410).

In coordination with case law, RCW § 23B.08.030 has been construed to require that corporate directors and officers exhibit undivided loyalty to the corporations they serve; and that they refrain from personally profiting at the corporation's expense. *See* Landefeld, et.al., Washington Corporation Law: Corporations and LLCs, at §8.4 (2002); *see also* State ex rel. Hayes Oyster Co. v. Keypoint Oyster Co. 64 Wn.2d 375, 391 P.2d 979, 983 (1964).

On January 13, 2003, an independent certified public accounting firm, Hagen Streiff Newton & Oshiro, retained to conduct a review of Evergreen financial matters, submitted a report of findings detailing extensive misconduct on the part of Edwards during his tenure as CEO of Evergreen (the "Hagen Report," submitted herewith under seal). Among the findings reported were:

■ Edwards' Failure to comply with obvious restrictions in franchise agreements, endangering the value of Evergreen's only asset, its Outback Restaurant franchises:

MOTION FOR TEMPORARY
RESTRAINING ORDER (NO. C 03-0108 BJR) - 8
3962\001\149394.01

TOUSLEY BRAIN STEPHENS PLLC
700 Fifth Avenue, Suite 5600
Seattle, Washington 98104-5056
TEL 206.682.5600 • FAX 206.682.2992

1    Initial funding of restaurants created a debt that is over and above what is authorized
     in the Franchise Agreement
2         A. Burlington
               1) Cash shortfall upon opening was $552, 430
3         B. Southcenter
               2) Cash shortfall upon opening was $306, 658
4

5    Hagen Report at 2.

6    ▪ Evidence of outright fraud in the submission of reimbursement requests:

7         Expenses Reimbursed for Store Openings and Site Selection Contain Numerous
          Items not Properly Expensed and/or not Related to Store Opening or Site Selection
8

9         …Schedule 1 sets forth our listing of Mr. Edwards' expenses reviewed…we
          reviewed expenses totaling $431,472.93 and determined that, $112,353.80 (26.04%)
10        [im]properly[2] supported, $25,497.36 (5.91%) were duplications or overcharges, and
          $23,211 (5.38%) did not indicate a clear business purpose.
11

12        …The duplications of items, especially airfares where the ticket receipt, travel
          agent's statement, and credit card statement are all submitted for reimbursement of
13        the same fare go beyond simple mistakes or careless errors…These repeated and
          blatant duplications indicate that the intent was to be reimbursed for expenses not
14        incurred.

15        We also were unable to determine that the expenses were actually incurred by Mr.
          Edwards.  For example, the documentation included with the expense report
16        indicated that airfare *was included in the hosted trip*, but airfare of $22,988.60, first
          class for two people, was charged on all legs of the trip. (Emphasis added.)
17

18        Hagen Report at 23-24.

19   ▪ Edwards' Failure to Comply With Express Instructions of the Evergreen Board of

20   Directors:

21        Subsequent to January 1998, ESLPs Were Charged $15,000 Each For Store
22        Opening and Site Selection in Conflict With Board of Directors Instructions

23        Our review indicates that virtually all of the expenses that were reimbursed were
          those of Craig Edwards.  Mr. Clifford Jones has indicated that, at the yearly 1998
24        meeting of the Board of Directors, Mr. Edwards was instructed to cease charging
25        the ESLPs $15,000 for site selection.  Exhibit 27 indicates that the ESLPs continued

26   ───────────────
     [2] Although the original Hagen Report reads: "(26.04%) *properly* supported" (emphasis added), the context of the
     document and the associated schedule clearly indicates that "*improperly*" supported was the intended language.

TOUSLEY BRAIN STEPHENS PLLC
700 Fifth Avenue, Suite 5600
Seattle, Washington 98104-5056
TEL 206.682.5600 • FAX 206.682.2992

1

to be charged as late as March 2000, when Burlington paid $15,000 to ESRC. These totaled $180,000.

2

Hagen Report at 23.

3

4

The findings quoted above are merely a handful of excerpts culled from a twenty-seven

5

page report detailing misconduct at only four of Evergreens' 27 Outback franchises. Hagen

6

Report at 5. Given Edwards' background as a CPA and former partner in one of the largest

7

accounting firms in the country, it is simply implausible that such extensive misconduct could

8

have been the product of excusable neglect or error. Complaint, at ¶3.39 (attached to Hoff

9

Decl. as Ex.A).

10

11

Leich's claims for corporate waste, unjust enrichment, and conversion, all derive from

12

this same pattern of misconduct and are similarly supported by the evidence contained in the

13

Hagen Report. *Supra, and see* Leich Decl. ¶4 (verifying accuracy of Complaint).

14

Further, Leich's claim for minority shareholder oppression is supported by the very

15

actions that Leich seeks to block through this TRO. To sustain a prima facie cause of action for

16

oppression, a shareholder must present specific factual evidence that the actions of the majority

17

shareholder have, or undoubtedly will, directly affect the financial, and not personal, interests

18

of the firm's minority shareholders. Henley v. Lee, Smart, Cook, Martin & Patterson, P.S., 12

19

P.3d 626, 636-37, 2000 Wash. App. LEXIS 2131 (2000).

20

21

Edwards is attempting, unilaterally and against the wishes of the minority shareholders

22

of Evergreen, to amend Evergreen's bylaws to effect a diversion of funds essential to the

23

continued operation of Evergreen's business is clearly evidence of action by a majority

24

shareholder that directly and negatively affect the financial interests of Evergreen's minority

25

shareholders. Jones Decl., at ¶20; *See also,* Exhibit D to Leich Decl. It is indisputable that

26

OSF, if it decides to terminate its relationship with Evergreen pursuant to the franchise

MOTION FOR TEMPORARY
RESTRAINING ORDER (NO. C 03-0108 BJR) - 10
3962\001\149394.01

1   agreements—as it has continued to threaten to do if Edwards assumes any managerial control

2   of operations—will effectively diminish the value of Evergreen and attempt to destroy

3   Evergreen's ability to do business. Edwards' end run around his prior existing agreement to

4   permit necessary cross collateralization of ERVI loans is similarly against the interests of

5   Evergreen and its shareholders. Edwards' proposed concurrent amendments severely limiting

6   the future ability of Evergreen shareholders to undo his actions further evidences Edwards'

7   oppression of Evergreen's minority shareholders.

8

9   **B. There is a Substantial Risk of Irreparable Harm.**

10   The actions that Leich seeks to enjoin by this TRO impose a substantial risk of

11   irreparable harm not only to Leich, but to Evergreen, its shareholders, its limited partners, and

12   every individual or entity involved with Evergreen. Currently, all of the management fees

13   ERVI receives have been and are urgently required to be spent on supporting the continuing

14   operation of the limited partnerships. Leich Decl., at ¶14; Jones Decl., at ¶18. Thus, the

15

16   diversion of the funds that will be required if Edwards is permitted to the amend Evergreen's

17   bylaws threatens the very existence of Evergreen. The exact argument applies if Edwards is

18   permitted to upset the status quo by prohibiting the necessary and agreed upon cross

19   collateralization of loans to ERVI.

20   Although a determination of "irreparable harm" is necessarily fact-specific, the Ninth

21   Circuit has previously found that in the context of a breach of fiduciary duty claim, a showing

22   that the defendants had engaged in a pattern of "improperly dispersing of and transferring

23   assets" was sufficient to satisfy a finding of potentially irreparable harm. Walczak v. EPL

24   Prolong, Inc., 198 F.3d 725, 731 (9th Cir. 1999). Here, the Hagen Report firmly establishes

25

26

MOTION FOR TEMPORARY
RESTRAINING ORDER (NO. C 03-0108 BJR) - 11
3962\001\149394.01

TOUSLEY BRAIN STEPHENS PLLC
700 Fifth Avenue, Suite 5600
Seattle, Washington 98104-5056
TEL 206.682.5600 • FAX 206.682.2992

1   Edwards' history of misuse of Evergreen corporate funds to the detriment of Evergreen

2   shareholders. *Supra*, Section (A)(i).

3   Further, Edwards' *de facto* reassertion of control over Evergreen's management fees in

4   contravention of the wishes of OSF will irretrievably undermine Evergreen's relationship with

5   OSF and jeopardize all of the franchise agreements. OSF has threatened and continues to

6   adhere to its threat that it will terminate Evergreen's franchise agreements if Edwards is

7   permitted to maintain any position of active control in Evergreen. *See* Jones Decl., at ¶20.

8

9   Loss of the ability to exist as a business will certainly irreparably harm Evergreen and its

10  shareholders.

11  **C. The Balance of Hardships Clearly Favors the Preservation of the Status Quo.**

12  Through a Temporary Restraining Order, a District Court has the power to preserve the

13  status quo pending its own decision on whether to afford preliminary injunctive relief. United

14  States v. United Mine Workers, 330 U.S. 258, 293 (1947).

15

16  With the consent of all Evergreen shareholders, the ERVI/Evergreen arrangement that

17  Edwards' proposed bylaw amendments will disrupt has lasted for more than two years. Leich

18  Decl., at ¶12; Jones Decl., at ¶12. It is directly responsible for the continued viability of

19  Evergreen and any increases in shareholder value. Id. All of the management fees ERVI

20  receives—and additional funds from Jones—have been used to enhance the value of

21  Evergreen's limited partnerships. This, in turn, has enhanced the value of Evergreen itself.

22

23  ERVI's prudent use of management fees is also directly responsible for the significant increase

24  in distributions from the various limited partnerships: from approximately $3.8 million in 2000

25  to approximately $5.8 million in 2002. Id. Edwards' actions risk all of this; thus, not only will

26  Edwards not suffer harm from the issuance of the TRO requested here, it is substantially likely

TOUSLEY BRAIN STEPHENS PLLC
700 Fifth Avenue, Suite 5600
Seattle, Washington 98104-5056
TEL 206.682.5600 • FAX 206.682.2992

1   that he will affirmatively *benefit* from the limitation on his own imprudent conduct.  Jones, the

2   only other shareholder of Evergreen, affirmatively supports the maintenance of the status quo.

3   Jones Decl., at ¶22.

4       Edwards simply cannot show that the minimal delay envisioned by this TRO will affect

5   his interests in any legitimately negative way.  Given that Leich has shown that the actions

6   sought to be barred will assuredly and significantly affect the continued financial viability of

7   Evergreen, the balance of hardships here clearly favors the granting of this motion.

8

9   **D. The Hagen Report Contains Sensitive Financial Information Warranting Submission to the Court Under Seal.**

10      The Hagen Report contains confidential and proprietary information of Evergreen and it

11  would be extremely damaging to Evergreen and is various partners if this information became

12  public.  Given the highly sensitive nature of the Report, which was commissioned as a

13  forensics report of potential wrongdoing, it would be in the interests of justice for the Report to

14  be placed under Seal.  *See* Declaration of Clifford Jones in Support of Motion to Seal.

15

16                                   **IV. Bond**

17      Plaintiff is seeking minimal relief by this motion:  blocking of a shareholders meeting

18  that would disturb the status quo pending a preliminary hearing on this issue.  The other

19  minority Evergreen shareholder, fully supports Plaintiff.  Moreover, the status quo that is

20  sought to be preserved has been in place for two years with the agreement of Defendant

21  Edwards.  Any bond required to place a temporary restraining order into effect, therefore,

22  should be minimal.

23

24

25

26

MOTION FOR TEMPORARY
RESTRAINING ORDER (NO. C 03-0108 BJR) - 13
3962\001\149394.01

TOUSLEY BRAIN STEPHENS PLLC
700 Fifth Avenue, Suite 5600
Seattle, Washington  98104-5056
TEL 206.682.5600 • FAX 206.682.2992

1

## V. Conclusion

2  For the reasons stated above, Derivative Plaintiff Raymond Leich respectfully requests

3  that this court (1) grant this Motion for a Temporary Restraining Order in the form of the

4  accompanying Proposed Order; and (2) permit the submission of the Hagen Report under seal.

5  RESPECTFULLY SUBMITTED, this 21st day of February 2003.

6

7                                    TOUSLEY BRAIN STEPHENS PLLC

8

9                          By: _____

10                                    David D. Hoff, WSBA #99
                                      Janissa A. Strabuk, WSBA #21827
11                                    Attorneys for Plaintiff

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

TOUSLEY BRAIN STEPHENS PLLC
700 Fifth Avenue, Suite 5600
Seattle, Washington  98104-5056
TEL 206.682.5600 • FAX 206.682.2992