THE HONORABLE BARBARA J. ROTHSTEIN

FILED ___ ENTERED
___ LODGED ___ RECEIVED

FEB 21 2003

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| RAYMOND LEICH, a resident of Florida, derivatively on behalf of EVERGREEN STATE RESTAURANT CORP., <br><br> Plaintiff, <br><br> v. <br><br> CRAIG and JANE DOE EDWARDS, Washington residents, and their marital community, <br><br> Defendants, <br><br> and <br><br> EVERGREEN STATE RESTAURANT CORP., a Washington corporation, <br><br> Nominal Defendant. | NO. C 03-0108 BJR <br><br> DECLARATION OF CLIFFORD JONES |
| CRAIG R. EDWARDS, on his own behalf and on behalf of EVERGREEN STATE RESTAURANT CORP., <br><br> Counterclaimant and Third-Party Plaintiff, <br><br> v. <br><br> RAYMOND M. LEICH, an individual; CLIFFORD L. JONES and LINDA JONES, and their marital community; and EVERGREEN RESTAURANT VENTURES, INC., a Washington corporation, <br><br> Counterclaim Defendants and Third-Party Defendants. | CV 03-00108 #00000012 |

DECLARATION OF CLIFFORD JONES- 1
3962\001\149397.01

ORIGINAL



TOUSLEY BRAIN STEPHENS PLLC
700 Fifth Avenue, Suite 5600
Seattle, Washington 98104-5056
TEL 206.682.5600 • FAX 206.682.2992

I, Clifford L. Jones, declare and state as follows:

1. I am a third party defendant in this action. I am over the age of 18, am competent to testify, and do so based upon my personal knowledge.

2. I am an owner of Evergreen State Restaurant Corporation ("Evergreen"), nominal Defendant in this matter. I am a director of the corporation. Plaintiff Ray Leich ("Leich") is also an owner and director. The only other owner is Defendant Craig Edwards ("Edwards"). Edwards is also the only other director; he is Chairman of the Board.

3. Edwards owns 70 of 101 issued and outstanding shares of Evergreen. I own 30 shares. Leich owns one share. I am currently President of Evergreen.

4. I have read the Complaint in this manner and I confirm that the allegations contained in the Complaint are true and correct. I incorporate those allegations into this Declaration by reference.

5. I have also read the Demand Letter presented by my attorneys to the Board of Directors of Evergreen. I verify that the background information and other facts contained in the demand letter are true and correct, and incorporate it into this Declaration by reference. I urge the Court to review the allegations of misconduct contained in the Demand Letter.

6. Leich and I personally presented the Demand Letter to Edwards on January 20, 2003. Edwards voted against complying with the Demand Letter. Because Edwards owns more than two thirds of the outstanding and issued shares of Evergreen, and, I believe, would have used his controlling interest to fire me from my position as a director in order to take whatever action he desired (he has told me in the past that he is willing to do this), I believed it would be futile to vote in favor of the action. Accordingly, I avoided what I believe to be unnecessary expense and delay by also voting against the Demand Letter. Leich has sought recourse as a

DECLARATION OF CLIFFORD JONES- 2
3962\001\149397.01

TOUSLEY BRAIN STEPHENS PLLC
700 Fifth Avenue, Suite 5600
Seattle, Washington 98104-5056
TEL 206.682.5600 • FAX 206.682.2992

1  shareholder; now that I have been joined in the suit as a third party defendant, I intend to bring claims similar to those made by Leich.

7. Through a network of joint ventures and limited partnerships, Evergreen owns an interest in and had management responsibilities for each of 27 Outback Steakhouse restaurants located throughout the Pacific Northwest. Distributions to Evergreen from this operation have historically totaled more than one million dollars annually; Evergreen has no other assets or sources of income. Evergreen's participation in the restaurants is subject to franchise agreements with Outback Steakhouse of Florida, Inc ("OSF"). These franchise agreements give OSF broad latitude in approval and termination of franchisees.

8. For most of the period 1995-2001, Edwards was President of Evergreen and managed its obligations with respect to the restaurants, OSF, and the various limited partnerships. During this same period, however, Edwards experienced problems with his alcoholism and was twice forced to seek treatment. At OSF's urging, I took over management of Evergreen during Edwards' absences. Unfortunately, Edwards' conduct and mismanagement, exacerbated by his personal problems, jeopardized Evergreen's relationship with OSF and Evergreen's limited partners. Finally, in January 2001, OSF threatened to terminate Evergreen's franchise agreements unless Edwards was removed from active control and replaced by me.

9. Section 5.3 of the franchise agreements seem to permit OSF to decide who will be the "Operating Partner"—up until now it had been Edwards—and we were all concerned that this might mean the end of Evergreen. Termination of Evergreen's franchise rights would result in tremendous losses and, I believed, open us up to lawsuits from our limited partners, joint venture partners, and others.

DECLARATION OF CLIFFORD JONES- 3
3962\001\149397.01

TOUSLEY BRAIN STEPHENS PLLC
700 Fifth Avenue, Suite 5600
Seattle, Washington 98104-5056
TEL 206.682.5600 • FAX 206.682.2992

10. In response, Edwards, Leich and I unanimously agreed that Third Party Defendant Evergreen Restaurant Ventures Incorporated ("ERVI"), owned and operated by me (I was also simultaneously unanimously elected president and CEO of Evergreen), would take over Evergreen's management responsibilities. I was also made Operating Partner within the meaning of the franchise agreements. In consideration, ERVI would receive any management fees permitted under the various franchise and limited partnership agreements. Evergreen would continue to hold its ownership interests but would essentially be a "silent" investor. The alternative to this strategy was to face termination by OSF and the consequent collapse of Evergreen's asset value. Ray Leich holds a five percent (5%) interest in ERVI.

11. I want to stress that there was no question that Edwards agreed to this arrangement. Edwards, Leich and I spent two days in Washington State in late January, 2001, scrambling to keep OSF from terminating the relationship. With Edwards' help we advised the staff that they would be working for a new company (not yet named at that time), and we also explained the situation to our various partners and restaurant operations managers. Edwards was supportive of the idea at the time as the only means of keeping Evergreen alive and protecting our investments and future distributions.

12. With the consent of all Evergreen shareholders, the ERVI/Evergreen arrangement has lasted for more than two years. It is directly responsible for the continued viability of Evergreen and any increases in shareholder value. All of the management fees ERVI receives—and additional funds from me—have been used to enhance the value of Evergreen's limited partnerships. This, in turn, has enhanced the value of Evergreen itself. ERVI's prudent use of management fees is also directly responsible for the increase in distributions from the 27 limited partnerships in which Evergreen has an interest: from approximately $3.8

DECLARATION OF CLIFFORD JONES- 4
3962\001\149397.01

TOUSLEY BRAIN STEPHENS PLLC
700 Fifth Avenue, Suite 5600
Seattle, Washington 98104-5056
TEL 206.682.5600 • FAX 206.682.2992

million in 2001 to approximately $5.8 million in 2002. In the meantime, OSF, although it continues to take issue with Edwards' majority ownership of Evergreen (claimed by OSF to violate the franchise agreements), has granted extensions to Evergreen to work its issues out. These extensions and the friendly atmosphere between Evergreen and OSF would not exist but for the efforts of Leich, me and ERVI, and would certainly immediately cease to exist if Edwards used his majority interest to re-seize operational control.

13.     Let me re-emphasize how the management fees are being used. Management fees pay for critical management and accounting support for the restaurants owned by the various limited partnerships. ERVI also uses fees to pay for technical support and training relating to food items and service, and for the salaries of managers in training. ERVI also has used the fees in the past two years to re-build a marketing effort not undertaken by Edwards. For example, ERVI purchased a billboard at Safeco Field in Seattle to promote Outback Steakhouse Restaurants and to secure a lucrative co-marketing agreement with the Seattle Mariners involving the Outback Steakhouse "Outpost." The underlying purpose of all these efforts is to enhance the value of the limited partnerships and, by extension, the value of Evergreen.

14.     These and other efforts have used funds in excess of available management fees and caused ERVI to incur losses. ERVI collected fees of $1.6 million in 11 months of operational control in 2001; ERVI spent $2.4 million (a loss of more than $800,000) on management efforts relating to the 27 Restaurants indirectly owned by Evergreen. In 2002, ERVI collected $1.7 million in fees; ERVI spent during the same period $2.2 million (a loss of more than $400,000) on management efforts relating to the 27 restaurants owned by Evergreen. I distinguish the use of the fees here because ERVI owns interest in five OSF-related limited partnerships not, at OSF's insistence, owned by Evergreen.

DECLARATION OF CLIFFORD JONES- 5
3962\001\149397.01

TOUSLEY BRAIN STEPHENS PLLC
700 Fifth Avenue, Suite 5600
Seattle, Washington 98104-5056
TEL 206.682.5600 • FAX 206.682.2992

15. ERVI pays me a salary of $50,000 (paid in management fees); it pays ERVI's managing director, Jeff Jones, a salary of $175,000. Jeff Jones and I together manage the limited partnerships for a combined salary of $225,000; this is the salary commanded by Edwards when Evergreen had management responsibilities.

16. I believe that management fees should be used for the purposes of managing and increasing the value of the limited partnerships (and thus, in this instance, Evergreen), and should not be profit centers. The limited partners agree with this view. When Edwards was responsible for management fees, his attorney has claimed, Edwards held back as much as $500,000 which he then claimed as "profits" from the management fee operation. ERVI does not operate this way.

17. Edwards has scheduled a special shareholders meeting for Monday, February 24, 2003. At this meeting, he proposes to use his voting power as two-thirds shareholder to amend Evergreen's bylaws in a manner that would purport to force Evergreen to break its longstanding agreement with ERVI by paying Evergreen's expenses and overhead—all unrelated to management of the limited partnerships, in which Evergreen no longer plays an active role—before remitting any funds to ERVI to pay for management operational expenses.

18. All management fees are urgently required to be spent on supporting the limited partnerships and none can be spared to pay for Evergreen "expenses" unrelated, as Evergreen does not provide management support, to the purposes for which the management fees are collected. In addition, OSF has required as a condition of continued franchise control that Edwards have no active role in management. Still further, the limited partnerships themselves expect and require that management fees collected pursuant to limited partnership agreements

DECLARATION OF CLIFFORD JONES- 6
3962\001\149397.01

TOUSLEY BRAIN STEPHENS PLLC
700 Fifth Avenue, Suite 5600
Seattle, Washington 98104-5056
TEL 206.682.5600 • FAX 206.682.2992

1  and franchise agreements be used solely for providing management services directly related to the operation of the limited partnerships.

19A.  Evergreen presently collects a management fee of 2.25% of gross sales from each limited partnership. Under certain conditions, Evergreen could charge up to 4%. However, I believe that increasing the management fee for the purposes contemplated by Edwards cannot be justified to the limited partners; also, I do not believe that any increase in fees would serve to satisfy Edwards' desire to profit from improper channels.

19B.  A similar issue exists with respect to the manner of "expenses" Edwards might expect to be retained by Evergreen pursuant to the proposed amended bylaws. For years, Edwards used his position as President of Evergreen and controlling shareholder to treat Evergreen as his personal bank account. As reported by an independent forensic accountant, Edwards paid for personal expenses out of corporate funds, and often reimbursed himself for duplicate expenses and expenses charged but not incurred. The magnitude of this improper conduct, which is mentioned only in passing here in the interests of brevity, cannot be overstated. I have by separate Declaration referred to the independent accountants report.

20.  The proposed amendments to bylaws also include a provision that would prohibit Evergreen from "Loaning funds or other assets of the Corporation to any other person or entity, guaranteeing the debt of any other person or entity, or using assets of the Corporation as security for the obligation of any other person or entity." This appears to restrict Evergreen's right to cross-collateralize loans. This is exactly the arrangement currently in effect with EVRI, and which permits EVRI to manage the limited partnerships in a manner acceptable to OSF. Without this cross-collateralization, Evergreen's ability to maintain its franchise relationships will be in jeopardy. Importantly, Edwards has specifically agreed to this cross-collateralization

DECLARATION OF CLIFFORD JONES- 7
3962\001\149397.01

TOUSLEY BRAIN STEPHENS PLLC
700 Fifth Avenue, Suite 5600
Seattle, Washington 98104-5056
TEL 206.682.5600 • FAX 206.682.2992

1  and we have operated on this basis for two years. I believe that Edwards' heavy-handed effort
2  to force changes to the process that preserves the highest value for Evergreen is an ill-
3  considered end-run around his binding commitments and his duties to other Evergreen
4  shareholders.

5  21.    A copy of the Evergreen Bylaws presently in effect is attached to this Declaration as
6  Exhibit H.

7
8  22.    A return to Edwards' practices would irreparably harm Evergreen and its shareholders
9  and threaten the viability of the corporation. He should be prevented from amending the
10 bylaws of Evergreen or from otherwise disrupting the status quo.

14  I declare under penalty of perjury under the laws of the State of Washington that the
15 above information is a true and correct to the best of my knowledge, information, and belief.

17  DATED this _____ day of February, 2003, at _____.

                                                    _____
                                                    Clifford Jones

DECLARATION OF CLIFFORD JONES- 8
3962\001\149397.01

TOUSLEY BRAIN STEPHENS PLLC
700 Fifth Avenue, Suite 5600
Seattle, Washington 98104-5056
TEL 206.682.5600 • FAX 206.682.2992

1  and we have operated on this basis for two years. I believe that Edwards' heavy-handed effort
2  to force changes to the process that preserves the highest value for Evergreen is an ill-
3  considered end-run around his binding commitments and his duties to other Evergreen
4  shareholders.
5  21.    A copy of the Evergreen Bylaws presently in effect is attached to this Declaration as
6  Exhibit F.
7
8  22.    A return to Edwards' practices would irreparably harm Evergreen and its shareholders
9  and threaten the viability of the corporation. He should be prevented from amending the
10 bylaws of Evergreen or from otherwise disrupting the status quo.
11
12
13
14         I declare under penalty of perjury under the laws of the State of Washington that the
15 above information is a true and correct to the best of my knowledge, information, and belief.
16
17         DATED this _____ day of February, 2003. at _Orange, Ca_.
18
19                                                    _____
20                                                    Clifford Jones
21
22
23
24
25
26

DECLARATION OF CLIFFORD JONES- 8                    TOUSLEY BRAIN STEPHENS PLLC
3962\001\349397.01                                  700 Fifth Avenue, Suite 5600
                                                    Seattle, Washington 98104-5056